IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**SANDRA LEE BART,**

      **Petitioner,**

v.                                                             Case No. 1:19-cv-00245

**M.E.REHERMAN, Warden**
**Alderson FPC,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), Petitioner's request to withdraw her Petition, (ECF No. 15), and Respondent's request for dismissal. (ECF No. 9). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned respectfully **RECOMMENDS** that Petitioner's request to withdraw her petition, (ECF No. 15), be **GRANTED;** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's request for dismissal, (ECF No. 9), be **GRANTED;** and that this action be **DISMISSED, without prejudice**, and removed from the docket of the court.

I.      **Relevant History**

*i.) Proceedings in sentencing court*

On November 18, 2015, a grand jury sitting in the United States District Court for the District of Minnesota returned a superseding indictment charging Petitioner, Sandra Lee Bart ("Bart"), along with three co-defendants, with violations of federal immigration laws. *United States of America v. Cabrera,* Case No. 0:15-cr-00190-DSD-LIB-3 (D. Minn. 2015) at ECF No. 37. Bart and her co-defendants were charged with conspiring to fraudulently solicit illegal kickback fee payments from foreign workers seeking temporary work visas, in violation of federal laws. *Id.* at 1-9. Specifically, Bart was charged with one count of conspiracy to commit false swearing in an immigration matter in violation 18 U.S.C. § 371, ("Count One"); conspiracy to commit fraud in foreign labor contracting in violation 18 U.S.C. § 1349, ("Count Two"); and conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, ("Count Three"). *Id.* at 9-16.

On August 8, 2016, following a five-day jury trial, the jury returned a verdict finding Bart guilty of all three counts. *Id.* at ECF No. 166. On January 26, 2017, Bart was sentenced in the United States District Court for the District of Minnesota ("District Court") to 60 months imprisonment on each count, all set to run concurrent with one another. *Id.* at ECF No. 244 at 2. Bart was additionally sentenced to two years of supervised release on each count, set to run concurrent with one another. *Id.* at 3.

On January 30, 2017, Bart submitted a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit"). *Cabrera,* Case No. 0:15-cr-00190-DSD-LIB-3 at ECF No. 246. The Eighth Circuit denied Bart's appeal and affirmed the judgment of the District Court in an opinion issued April 24, 2018. *Id.* at ECF No. 289 at 2. On October 2, 2018, the Supreme Court of the United States denied Bart's petition for

a *writ of certiorari*. *Id*. at ECF No. 332.

On September 30, 2019, Bart, through counsel, submitted a Motion to Vacate under 28 U.S.C. § 2255, contending that her convictions should be overturned. *Id*. at ECF No. 349. On January 13, 2020, Bart submitted a motion requesting that counsel be appointed to assist her in preparing a motion to reduce her sentence made pursuant to 18 U.S.C. § 3582 as amended by the First Step Act of 2018 ("FSA"). *Id*. at ECF No. 366 at 1. Bart explained that she anticipated filing a motion under subsection (c)(1)(A)(i) of that Act in the District Court. *Id*. On January 14, 2020, the District Court granted Bart's request and appointed counsel to represent her in pursuit of a sentence reduction under the FSA. *Cabrera,* Case No. 0:15-cr-00190-DSD-LIB-3 at ECF No. 367.

Bart, through appointed counsel, filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in March 2020, which was placed under seal. *Id*. at ECF Nos. 370, 373. On March 20, 2020, the United States submitted a motion requesting more time to respond to Bart's request for a sentence reduction. *Id*. at ECF No. 374. In support, the United States indicated that the government was briefly unable to access necessary medical records due to a nationwide outage of a database maintained by the Bureau of Prisons ("BOP"). *Id*. at 1. The United States additionally informed the District Court that counsel for the government was in communication with the Probation Office in the Northern District of Ohio to confirm that office's ability to supervise Bart if she were released, and seeking to obtain a medical privilege waiver in order to understand Bart's medical condition. *Id*. The United States accordingly requested, with the consent of Bart's counsel, an extension of time, until April 17, 2020, to submit a response to Bart's request for a sentence reduction. *Id*. at 1-2. This request was granted on March 23, 2020. *Id*. at ECF No. 375.

*ii.) Administrative remedial proceedings*

Bart's administrative remedial proceedings follow a somewhat convoluted path, with multiple, sometimes simultaneous, motions and appeals of adverse decisions submitted at varying levels of review. Speaking broadly, Bart submitted two motions requesting early release under § 3582 due to her failing health. When these were denied, she submitted numerous challenges to the adverse decisions at both the institutional and regional level of review. The following summary is not a complete history of Bart's attempts to achieve early release through the prison remedial process, but is provided as factual background for this petition.

On December 31, 2018, Bart submitted a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1)(A) and 4205(g) to M.E. Reherman, the Warden of Federal Prison Camp Alderson ("FPC Alderson"). (ECF No. 9-1 at 17, 19). In the motion, Bart asserted that she had recently been diagnosed with "Stage 4 Ovarian Carcinoma," and requested that she be granted compassionate release or a reduction of her sentence. (*Id.* at 19-20). On January 10, 2019, Natalie Wright, D.O., documented a Health Encounter she had with Bart. (*Id.* at 67). In the report, Dr. Wright stated that Bart had indicated she did not wish to undergo a recommended surgical procedure, and additionally was refusing to be given any vaccines. (*Id.*). Dr. Wright noted that the recommended surgery was "not expected to be curative," but was necessary to obtain a "tissue diagnosis," without which Bart would be unable to secure a compassionate release. (*Id.*). Dr. Wright stated that Bart was "stuck in the idea that she will get to go home via a compassionate release." Dr Wright indicated she had the clinical director discuss the issue with Bart in order to be "very sure that [Bart] does not think if she stalls the surgery or refuses treatment the BOP will automatically say 'well we have to let her go home so she

4

will get treatment.'" (ECF No. 9-1 at 67). On January 11, 2019, Bart submitted a letter to Warden Reherman, objecting to the fact that she had been informed by prison medical staff that her request would be delayed if she did not agree to undergo a biopsy procedure. (*Id.* at 22).

On January 24, 2019, Bart received a letter from Warden Reherman, informing her that her request for compassionate release was being denied. (*Id.* at 24). Warden Reherman stated that Bart's "diagnosis is neoplasm of uncertain behavior of the left ovary and spleen and elevated CA-125." (*Id.*). Warden Reherman noted that, following evaluation by several medical professionals, the recommended course of treatment was "a total abdominal hysterectomy, bilateral salpingo-oophorectomy, and splenectomy which will allow for tissue confirmation of the tumor type as well as treatment." (*Id.*). Warden Reherman determined that Bart did not meet the criteria for compassionate release under § 3582 because she had not received a "definitive diagnosis" of a terminal, incurable disease, and had not obtained a "prognosis with life expectancy." (*Id.*).

On January 29, 2019, Bart submitted a letter appealing the denial of her motion for compassionate release to the BOP's Mid-Atlantic Regional Office. (ECF No. 9-1 at 108). Bart explained that she was bypassing the ordinary administrative appeal process because she was faced with extraordinary circumstances and staff at FPC Alderson were denying her request to receive an "outside opinion." (*Id.* at 108-09).

On February 7, 2019, Joseph Dickenson, M.D./C.D., prepared a re-designation referral request submitted by FPC Alderson recommending that Bart be transferred to a federal medical facility. (*Id.* at 45-47). In the Narrative Summary section of the form, Dr. Dickenson stated as follows:

> … CT of the abdomen and pelvis revealed a 12 x 6 cm lobulated mass at the

5

>right adnexa with an 11.5 cm mass of the splenic hilum and 2 separate lesions in the perisplenic area. CA-125 is 842. The inmate was evaluated by GYN Oncology and Surgical Oncology at CAMC Medical Center, Charleston, WV with recommendation for exploratory laparotomy with total abdominal hysterectomy, bilateral salpingo-oophorectomy, splenectomy for diagnosis and treatment. The inmate declined surgical intervention/diagnosis and requested a Compassionate Release, despite multiple providers counseling of the need for tissue for diagnosis. She currently does not qualify due to lack of definitive pathologic diagnosis. The inmate has chosen to delay surgical intervention while awaiting appeal of her Compassionate Release denial. There is concern for further complications from her pelvic and splenic masses. The distance required to obtain GYN Oncology specialist care (138 miles one way) at CAMC Medical Center in Charleston, WV and the recommended surgical intervention would place a financial hardship on the institution and a staffing hardship on Custody.

(ECF No. 9-1 at 46-47). On February 20, 2019, the re-designation request was denied by Susan Beardley, R.N. (*Id.* at 48). The transfer request was denied due to Bart's refusal to undergo recommended medical treatment. It was recommended that Bart have a psychological evaluation to determine her competency for refusing medical treatment, and that FPC Alderson staff attempt to convince Bart to follow the surgical recommendations. (*Id.*).

On February 22, 2019, psychologist C. Anthony, Ph.D., prepared a Psychological Evaluation, determining Bart's competency to refuse medical service. (ECF No. 9-1 at 55, 58). Despite Bart's refusal to participate in the evaluation, Dr. Anthony believed an accurate assessment of her competency to refuse medical treatment could be obtained by relying on available records. (*Id.* at 56). Dr. Anthony determined that Bart was competent to refuse medical treatment. (*Id.* at 57). On March 8, 2019, Warden Reherman denied Bart's request to review the determination that she was ineligible for compassionate release. (*Id.* at 78).

On March 14, 2019, Bart submitted a Motion for Compassionate Release Pursuant to 18 U.S.C. § 4205(g) or 3582(c)(1)(A) for Extraordinary or Compelling Circumstances

to Warden Reherman. (*Id.* at 60). Bart asserted in the motion that her recent diagnosis of cancer, and accompanying recommended surgical procedure, resulted in compelling circumstances which should result in her release from incarceration. (*Id.* at 60-61). Bart explained that she believed her health would be compromised if she was forced to undergo treatment in the prison environment, and the care she would receive if released would be more conducive to her health. (*Id.*). Bart attached a number of medical records in support of her motion. (ECF No. 9-1 at 64-74). On the same day as Bart submitted her second motion requesting release under § 3582, the Regional Office denied Bart's appeal of the denial of her first request for compassionate release as she had failed to follow the proper procedures in submitting the appeal. (*Id.* at 99).

On March 20, 2019, Bart received a letter from Warden Reherman informing her that her second motion for release under § 3582 due to compelling or extraordinary circumstances had been denied. (*Id.* at 76). Warden Reherman stated that the request had been denied as the motion relied on the same basis as the previously denied motion for compassionate release, and Bart had "opted to not have the surgery which could provide further information to determine if you meet the eligibility criteria." (*Id.*). On March 25, 2019, D.J. Harmon, Regional Director of the BOP'S Mid-Atlantic Regional Office, denied an appeal submitted by Bart objecting to the denial of her first motion for compassionate release. (*Id.* at 96). Director Harmon informed Bart her appeal was denied as a "definitive diagnosis has not been established." (*Id.*). On March 27, 2019, Bart submitted a Request for Administrative Remedy to Warden Reherman objecting to the March 20, 2019 rejection of her motion requesting relief due to extraordinary or compelling circumstances. This request was denied on April 3, 2019. (*Id.* at 127). On June 11, 2019, Ian Conners, Administrator of the BOP's National Inmate Appeals, notified Bart that her

7

appeals as to the denial of her requests for compassionate release were both being denied on the basis that "the Warden properly found that you do not meet the 'terminal medical condition' criteria" necessary to obtain a reduction in sentence. (ECF No. 12 at 13-15).

    *iii.) Proceedings in this Court*

On April 3, 2019, Bart filed the instant § 2241 petition, accompanied by a memorandum in support. (ECF Nos. 1, 2). In the petition, Bart requests "compassionate release/sentence reduction for extraordinary or compelling circumstances under § 3582(C)(1)(A)." (ECF No. 1 at 2). Bart explains that she has been diagnosed with Stage III or IV carcinoma. (*Id.*). Bart asserts that when she presented her request for compassionate release to the BOP, it improperly required a "definitive diagnosis," which is not a requirement for release under the FSA. (*Id.*). Bart states that she did not appeal the initial denial of her request because the procedure recommended by the BOP would not cure her illness, and she feared it would take too long to complete the administrative remedy process. (*Id.* at 3). Bart indicates that she believes § 2241 is the appropriate procedural avenue for her to seek relief because she is "objecting to the decisions of the Federal Prisons in Alderson affecting my sentence and not the Court in Minnesota." (*Id.* at 4). Bart requests that she be released from prison so that she might receive treatment and spend time with her family. (*Id.* at 7).

In the accompanying memorandum, Bart expounds upon her request for relief, explaining that she is, at the time of submission, 71 years old, and has been diagnosed with "Stage 4 Ovarian Carcinoma with metastic [sic] disease." (ECF No. 2 at 1-2). Bart takes issue with the BOP's denial of her request for compassionate release, asserting that the decision to reject her request based on the fact that there was no "definitive" diagnosis, nor a prognosis with life expectancy, was in contravention of the requirements of the FSA.

8

(*Id.* at 2-3). Bart contends that the procedure required by Warden Reherman's conditioning of release on a definitive diagnosis would be invasive and detrimental to her health. (*Id.* at 3). Bart explains that, following the denial of her first request, she then filed a second request under the FSA, seeking to utilize an alternative provision, allowing for release when certain "extraordinary and compelling circumstances" are present. (*Id.*). This request too was denied, on the basis that Bart had provided no "new information." (*Id.* at 4). Bart believes this refusal amounted to an abuse of discretion, and further explains that she believes completing the administrative remedial process will take too much time. (*Id.* at 4-5). Bart asserts that the BOP's requirement she undergo further diagnostic testing is unreasonable and would effectively "tak[e] away Bart's right to her health-care decisions." (*Id.* at 7). Bart requests that she be granted a reduction in her sentence so that she may "go home during whatever time she has left to be with her family." (*Id.*).

On April 30, 2019, Respondent filed a Response to the Order to Show Cause, requesting that the petition be dismissed. (ECF No. 9 at 1). Respondent first contends that the petition should be dismissed as Bart failed to properly exhaust her administrative remedies with respect to her requests for compassionate release. (*Id.* at 11). Respondent asserts that, while Bart did file administrative requests for compassionate release, she failed to properly appeal the denial of these requests through the necessary tiers of review. (*Id.* at 11-12). Respondent next argues that the decision whether or not to grant release to terminally ill defendants is wholly discretionary, and the BOP's determination to deny such a request is not subject to judicial review. (*Id.* at 12-14). Finally, Respondent contends that the petition should be denied as a motion for compassionate release under the FSA must be filed in the sentencing court. (*Id.* at 15).

On June 26, 2019, Bart filed a Reply to Respondent's request for dismissal. (ECF No. 12). Bart asserts that she attempted to bypass the ordinary administrative remedial process because she believed prison officials were relying on misinformation and were biased against Bart. (*Id.* at 1-2). Bart further claims that during the time she was attempting to complete the administrative appellate process, she was improperly "harassed" by prison staff who attempted to prove that Bart was not competent to refuse medical treatment because she did not wish to undergo the procedures recommended by prison healthcare staff. (*Id.* at 2). Bart adds that while the FSA provides that the sentencing court may reduce an inmate's sentence, it does not state that *only* the sentencing court may do so, and consequently, this Court has jurisdiction to consider her petition. (*Id.* at 10-11). Bart contends that the BOP is acting unreasonably in requiring her to undergo an unnecessary surgery while in custody rather than releasing her. (*Id.* at 11). She believes that this conduct violates the Eighth Amendment to the United States Constitution's ("Eighth Amendment") proscription forbidding cruel and unusual punishment. (*Id.*).

On April 3, 2020, Bart submitted a Motion to Withdraw Request for Compassionate Release. (ECF No. 15). In the motion, Bart asks that she be permitted to withdraw her § 2241 petition. Bart explains that due to the recent outbreak of the COVID-19, she would be unable to obtain the medical care she seeks even if released from prison. (*Id.* at 1). Bart further states that she has been granted a request for early release under the FSA and is set to be released from BOP custody on June 30, 2020. (*Id.*).

## II.     Standard of Review

The government does not identify the standard under which it seeks dismissal of Bart's petition. It filed a response concurrently with the motion to dismiss. Therefore, the

10

motion should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, whether the Court construes the motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the distinction makes no practical difference as the same standard of review applies to either motion, and both motions may be filed in habeas actions. *Id.* at 138-39; *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

11

### III. **Discussion**

*i.) Respondent's request for dismissal*

Bart asks this Court to reduce her sentence pursuant to the FSA. "Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)). An exception to this general rule is provided by the compassionate release provision of the FSA. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Prior to the 2018 amendment to the FSA, only the Director of the BOP could file a motion seeking compassionate release for an inmate. *See United States v. Brewington*, No. 2:12CR00009-007, 2019 WL 3317972, at *1 (W.D. Va. July 24, 2019). Now, an inmate may petition a district court directly for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The FSA provides that a district court "may reduce the term of imprisonment" when certain circumstances are met. 18 U.S.C. § 3582(c)(1)(A). First, while inmates are now permitted to bypass the BOP, and petition a federal court directly for compassionate release, they must first exhaust available administrative remedies. *Id*. Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id*.

Congress did not define what constitutes "extraordinary and compelling reasons" sufficient to allow a sentence reduction under the FSA; however, the U.S. Sentencing Guidelines Manual provides, in relevant part, that "extraordinary and compelling reasons exist" when the "defendant is suffering from a terminal illness." U.S.S.G § 1B1.13 Application Note 1(A)(i). Furthermore, the FSA itself, while not explicitly stating that a terminal illness constitutes extraordinary and compelling circumstances, defines

"terminal illness," and mandates that the BOP must notify inmates diagnosed with a terminal illness of their right to file a request for a sentence reduction. *See* 18 U.S.C. § 3582(d). Accordingly, courts to consider the issue have found that a terminal illness will generally constitute an "extraordinary and compelling reason" for compassionate release. *See e.g., United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *5 (E.D. Va. Feb. 10, 2020).

It is clear that Bart is unable to proceed in pursuit of her request for compassionate release in this Court as such a motion must be filed in the sentencing court. Courts in this Circuit and elsewhere have consistently found that a § 2241 petition is not the appropriate mechanism by which to raise a request for compassionate release under § 3582, as such a request must instead be brought in the sentencing court. *See Robinson v. Wilson*, No. 1:17-CV-02630, 2017 WL 5586981, at *5 (S.D.W. Va. Sept. 26, 2017), *report and recommendation adopted*, No. CV 1:17-02630, 2017 WL 5586272 (S.D.W. Va. Nov. 20, 2017) ("Like a § 2255 motion, a § 3582 motion must be filed in the movant's underlying criminal action and be addressed by the sentencing court."); *see also Deffenbaugh v. Sullivan,* No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019) ("If petitioner now seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."); *Allah v. Fed. Bureau of Prisons Dir.*, No. CV 9:16-2665-BHH-BM, 2016 WL 5868093, at *4 (D.S.C. Sept. 12, 2016), *report and recommendation adopted*, No. CV 9:16-2665-BHH, 2016 WL 5851936 (D.S.C. Oct. 6, 2016) (same) (collecting cases); *Braswell v. Gallegos*, 82 Fed. Appx. 633, 635 & n. 2 (10th Cir. 2003) ("Because a motion filed under § 3582 requests modification of a sentence, it follows that such a motion must be filed in the district court which imposed the sentence."). Section 2241 is not the appropriate mechanism by which Bart may raise her request for

13

compassionate release as this request does not challenge the conditions of her confinement, but rather seeks to alter the sentence she is serving.[1] Where a petitioner mistakenly files a petition in a court which lacks jurisdiction over the claim, dismissal without prejudice is the proper response. *See Deffenbaugh,* No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2.

In this case, Bart has already filed a motion requesting compassionate release in the sentencing court. *Cabrera,* Case No. 0:15-cr-00190-DSD-LIB-3 at ECF No. 374. Bart is represented by counsel in pursuit of her motion for compassionate release in the sentencing court, and the case is currently ongoing. *Id.* As this request is not appropriately brought in a § 2241 petition, and Bart has already raised an identical request in the correct forum, the undersigned **FINDS** that Respondent's request for dismissal should be granted, and Bart's petition should be dismissed without prejudice.

*ii.) Request to voluntarily withdraw petition*

Bart has requested that her petition requesting compassionate release be withdrawn. (ECF No. 15 at 1). Fed. R. Civ. P. 41(a)(2) allows the district court to dismiss an action at the plaintiff's request under terms the court deems proper. The rule is applicable to requests to withdraw petitions filed under § 2241. *See Shrader v. Ives*, No. 1:13-CV-09386, 2013 WL 4520013, at *5 (S.D.W. Va. Aug. 27, 2013). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The "prospect of a

---

[1] Bart alleges that FPC Anderson prison officials' refusal to grant her request for compassionate release amounts to cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 12 at 11). To the extent that Bart wishes to raise a claim that prison officials' deliberate indifference to her medical needs has resulted in an independent violation of her Eighth Amendment rights, she would need to do so in a lawsuit brought pursuant to *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), rather than in a § 2241 petition. *See Dodson v. Fed. Bureau of Prisons*, No. CIV.A. 1:11-0411, 2012 WL 1067870, at *2 n.2 (S.D.W. Va. Mar. 29, 2012).

second lawsuit," alone, does not constitute prejudice sufficient to deny a motion under Rule 41(a)(2). *Vosburgh v. Indemnity Ins. Co. of North America*, 217 F.R.D. 384, 386 (S.D.W. Va. Sep. 12, 2003). Instead, when presented with a request for dismissal under Rule 41(a)(2), the court should consider a number of other factors, including: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." *Id.* (citing *Teck Gen. P'ship v. Crown Cent. Petroleum Corp.*, 28 F. Supp.2d 989, 991 (E.D. Va. 1998)).

In the instant action, Respondent has submitted a Response and request for dismissal. (ECF No. 9). However, the prejudice Respondent would suffer if Bart's request for withdrawal were to be granted is minimal. There is no indication that Bart is "seek[ing] to circumvent an expected adverse result," by asking that her request be withdrawn. *Nesari v. Taylor*, 806 F.Supp.2d 848, 861 (E.D.Va.2011). Instead, Bart provides a sufficient and logical explanation for her decision to withdraw her petition; namely, that the circumstances have changed regarding her wish to receive medical care outside of the BOP, and her request for early release has been granted. (ECF No. 15 at 1). Moreover, given the fact that this petition must be brought in the sentencing court, dismissal without prejudice is the appropriate outcome regardless of whether Bart's request for withdrawal is granted. Accordingly, no party is prejudiced by a dismissal of the action. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." *Gentry v. MCM*, No. CIV.A. 1:12-7695, 2013 WL 622225, at *1 (S.D.W. Va. Jan. 29, 2013) (quoting *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986)).

Therefore, the undersigned **RECOMMENDS** that the presiding District Judge

15

**GRANT** Bart's motion to withdraw her petition pursuant to Fed. R. Civ. P. 41(a)(2) and **DISMISS** the petition without prejudice.

### IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Petitioner's request to withdraw her petition, (ECF No. 15), be **GRANTED;** that Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's request for dismissal, (ECF No. 9), be **GRANTED;** and that this action be **DISMISSED, without prejudice**, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to

the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:** April 8, 2020

Cheryl A. Eifert
United States Magistrate Judge